UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE MOCERI,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>PLAZA HOME MORTGAGE, INC.; PROFESSIONAL LENDING GROUP; AURORA LOAN SERVICES; U.S. BANK, as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-18-N; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC; and MERSCORP; and DOES 1-50,<br><br>　　　　　　　　Defendants. | Civil No.  11cv1060-CAB (RBB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS [Doc. Nos. 15 and 16];**<br><br>**(2) DECLINING SUPPLEMENTAL JURISDICTION AS TO STATE LAW CLAIMS;**<br><br>**(3) SETTING OSC RE WHY PRELIMINARY INJUNCTION SHOULD NOT BE DISSOLVED;**<br><br>**(4) SETTING HEARING TO DETERMINE DISPOSITION OF SECURITY BOND** |

Plaintiff's claims arise out of the refinance of her home, located at 2929 Union Street, San Diego, California 92103. Plaintiff generally alleges consumer protection violations and other claims in the origination, processing and servicing of the loan, such that she is entitled to rescission of the loan under TILA and other damages. Among Plaintiff's allegations are that her loan application contained false information not

provided by her; she was not provided with certain material loan documents, including proper notice of right to cancel; the loan documents lacked clear and conspicuous terms; defendants ordered back-dating of loan documents; defendants failed to timely or meaningfully respond to qualified written requests under RESPA; and defendants failed to properly service her loan.

At first blush it appears that Plaintiff has a viable complaint, due to the various allegations of fraudulent backdating, inconsistent loan terms and failure to respond to inquiries. However, this Court spent considerable time analyzing the various allegations and came to the tentative conclusion that Plaintiff did not set forth any viable federal claims. On November 28, 2012, the Court issued a tentative ruling. [Doc. No. 48.]

On February 26, 2013, the Court held oral argument with regard to the motions to dismiss. [Doc. No. 54.] Randall Winet, Esq., and Marilyn Perrin, Esq. appeared on behalf of Plaintiff. Lynde Selden, II, Esq., appeared on behalf of defendant Plaza Home Mortgage, Inc. (Plaza). Stefanie Schiff, Esq. appeared on behalf of defendants Aurora Loan Services LLC (Aurora), U.S. Bank as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-18-N (U.S. Bank), Mortgage Electronic Registration Systems, Inc. (MERS), and MERSCORP, Inc. (MERSCORP). After hearing the argument of counsel, the Court **GRANTS WITH PREJUDICE** the motions to dismiss the fourth, eighth and ninth causes of action as to all defendants, and the second cause of action as to defendant Plaza. The Court **GRANTS WITH LEAVE TO AMEND** the motion to dismiss the second cause of action as to defendants Aurora, U.S. Bank, MERS and MERSCORP. The Court also **DENIES WITHOUT PREJUDICE** the motions to dismiss the state law claims (the first, third, fifth, sixth, and seventh causes of action) as to all defendants, and declines to exercise supplemental jurisdiction over the state law claims. The Court will set an OSC re: why the preliminary injunction should not be dissolved, and will also set a hearing pursuant to 28 U.S.C. § 1352 and Fed.R.Civ.P. Rules 65(c), 65.1 to determine the disposition of the security bond for an injunction that was based upon the federal claims.

## I. PROCEDURAL BACKGROUND

On May 13, 2011, Plaintiff filed the original complaint. [Doc. No. 1.] On June 1, 2011, Plaintiff filed a motion for temporary restraining order and preliminary injunction, seeking to prevent foreclosure. [Doc. No. 3.] On June 3, 2011, District Judge Houston granted the temporary restraining order and set a hearing date for the preliminary injunction. [Doc. No. 4.] On June 17, 2011, Judge Houston granted the preliminary injunction. [Doc. No. 13.] In doing so, Judge Houston specifically stated that "[b]ased on the TILA and RESPA violations allegedly committed by defendants, the court finds plaintiff demonstrates a likelihood of success on the merits of her claims." *Id*. at 2.[1]

On June 24, 2011, Plaintiff filed the First Amended Complaint. [Doc. No. 14.] On July 1, 2011, defendant Plaza filed a motion to dismiss. [Doc. No. 15.] On July 5, 2011, defendants Aurora, U.S. Bank, MERS, and MERSCORP filed a motion to dismiss. [Doc. No. 16.] On August 23, 2011, Plaintiff filed oppositions to the motions to dismiss. [Doc. Nos. 20-22.] On August 29, 2011, Defendants filed replies to the oppositions. [Doc. Nos. 23 and 24.] On August 30, 2011, Judge Houston took the motions to dismiss under submission. [Doc. No. 27.] Since then there has been additional briefing by the parties. [Doc. Nos. 30, 31, 45 and 46.][2] On March 13, 2012, the case was transferred to District Judge Bencivengo. [Doc. No. 36.]

## II. FIRST AMENDED COMPLAINT

In the First Amended Complaint (FAC), Plaintiff alleges claims for: (1) breach of contract and covenant of good faith and fair dealing; (2) violation of the Real Estate

---

[1] In so holding, Judge Houston specifically stated that he was not resolving the statute of limitations issue. [Doc. No. 19 at 38.]

[2] Defendants' unopposed Requests for Judicial Notice [Doc. Nos. 15-3 and 16-2] are HEREBY GRANTED, as the documents are matters of public record and/or referenced in the complaint. See *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir.1992) (holding that "[i]n federal courts, notice may be taken of facts relating to the particular case ... where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'") (citing Fed.R.Evid. 201(b)).

Settlement and Procedures Act ("RESPA"); (3) Negligence; (4) violation of the Federal Truth in Lending Act and Regulation Z ("TILA"); (5) declaratory relief; (6)quiet title; (7) fraud in the inducement; (8) violation of the fair credit reporting act; (9) violation of the fair debt collection practices act.

Defendant PLAZA was the originator of the loan. Plaintiff alleges that, in addition to numerous discrepancies with the loan documents, the loan was a "pick-a-pay-option, interest-only-type loan (the very same loan identified by the California State Attorney General as a predatory loan)." (FAC ¶ 21). Plaintiff alleges the loan closed on July 19, 2007 (¶ 22), but the loan did not fund until August 10, 2007 (FAC ¶ 26). Plaintiff's first payment letter received at the time of closing on July 19, 2007, indicated that her first payment would be due on September 1, 2007, in the amount of $4,812.50. (FAC ¶ 28). Plaintiff further alleges that "On August 10, 2007, PLAZA sent MOCERI a Transfer Sale of Loan notice, advising her that her September 1, 2007 payment would be in the amount of $8,312.50, payable to AURORA. (FAC ¶ 29).

Thereafter, Plaintiff alleges that she made her loan payments (presumably in the amount of $4,812.50) to Aurora for the remainder of 2007 and all of 2008. FAC ¶ 30. In March 2009, Plaintiff contacted Aurora to clarify her loan terms and discuss a possible loan modification, since Plaintiff was in fear of potential default. FAC ¶ 31. Aurora advised Plaintiff that her loan payment would go up in September of 2010 from $4,812.50 to $9,139.19. Plaintiff alleges she advised that she had not understood that to be the terms of her loan, and she repeated requests for a loan modification. Aurora did not satisfactorily respond to Plaintiff's loan modification efforts. FAC ¶ 31.

In May 2009, Plaintiff hired a company to perform a forensic audit of her loan file because she was concerned about the terms of her loan and how her payments were being applied. FAC ¶ 32. Thereafter, Plaintiff sent Aurora what she alleges was a Qualified Written Request (QWR) to obtain information and documents regarding her loan. FAC ¶ 33, Ex. J. In response, Aurora responded to Plaintiff's correspondence and also sent Plaintiff a loan modification package. FAC ¶ 34.

On October 31, 2009, Plaintiff mailed Aurora a rescission notice pursuant to TILA. FAC ¶ 37, Ex. L. From November 13, 2009 through June 28, 2010, there was a series of correspondence between Plaintiff and Aurora with regard to a Plaintiff's request for a loan modification. FAC ¶¶ 38-44. On June 28, 2010, Aurora denied Plaintiff's request for a loan modification. FAC ¶ 44.

In August 2010, Plaintiff retained another company to perform another audit of her loan. FAC ¶ 47. Thereafter, there was more correspondence between Plaintiff and Aurora regarding Plaintiff's request for a loan modification and further requests by Plaintiff for copies of loan documentation. FAC ¶¶ 54-59.

On October 5, 2010, Plaintiff mailed to Aurora another rescission letter. FAC ¶ 59, Ex. T. In the letter, Plaintiff tendered possession of the property to Aurora. Aurora denied Plaintiff's right to rescind. FAC ¶ 61. On May 17, 2011, Plaintiff found posted to the front door of her home a Notice of Trustee's Sale, advising that her home would be sold on June 10, 2011. FAC ¶ 68, Ex. X.

Defendant MERS is identified on the Deed of Trust as the beneficiary (and nominee for the lender). Doc. No. 16-2 at 6. MERSCORP is the parent entity of MERS. US BANK is the trustee and owner of the loan. FAC ¶ 5.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the collective facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*

In ruling on a motion to dismiss, a court may take judicial notice of matters of public record that are not subject to reasonable dispute.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## IV. DISCUSSION

A.  RESPA (second cause of action).

RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(e),(f). *Patague v. Wells Fargo Bank*, N.A., No. 10–CV–03460–SBA, 2010 WL 4695480, at *3 (N.D.Cal. Nov. 8, 2010).  Claims brought under § 2607 or 2608 are subject to a one-year statute of limitation, while claims under § 2605 are governed by a three-year statute of limitations, which commence to run when the violations occur. 12 U.S.C. § 2614.

Plaintiff purports to state claims under 12 U.S.C. § 2605(e) which states in pertinent part:

>   (e) Duty of loan servicer to respond to borrower inquiries
>         (1) Notice of receipt of inquiry
>              (A) In general
>    If any servicer of a federally related mortgage loan receives a

qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
   (B) Qualified written request
For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
   (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
   (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

1. Defendant Plaza.

Plaintiff alleges that Plaza "breached the terms of the Adjustable Rate Note when Plaza demanded MOCERI's first payment of $8,312.50, which was inconsistent with the terms of the note. PLAZA breached the Deed of Trust when it misapplied the payment and charged MOCERI for a full month of interest when she only had use of the loan funds for 20 days of August 2007." FAC ¶ 77. Plaintiff further alleges that Plaza violated RESPA "when it failed to properly account for MOCERI's first scheduled periodic payment." FAC ¶ 90.

Plaza argues that there is no claim under RESPA for failure to properly apply Plaintiff's payments. Plaintiff argues that by alleging that Plaza "misapplied the payment and charged her for a full month of interest" this states a claim under RESPA.

The Court agrees with Plaza that Plaintiff does not state a claim against Plaza under RESPA because she does not allege that Plaza failed to respond to a QWR, which is the only private claim allowed under RESPA. 12 U.S.C. §2605; *Tina v. Countrywide Home Loans, Inc.,* 2008 WL 4790906 at *6. Plaintiff's contentions with regard to the misapplication of the payment appear to invoke RESPA's loan-servicing provisions (12 U.S.C. § 2604), for which there is no private right of action. *Tina*, 2008 WL 4790906 at *6 (citations omitted). Therefore, Plaintiff does not state a RESPA claim against Plaza.

Plaza also argues that the claim is barred by the statute of limitations, which is three years from the date of the violation. 12 U.S.C. §§ 2605, 2614. Here, the payment

was allegedly misapplied in August 2007, but the lawsuit was not filed until May 2011. Therefore, the claim is also barred by the statute of limitations.

Plaintiff argues that the limitations period should be suspended under the doctrine of equitable tolling. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir.2000). The Ninth Circuit has explained:

> Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing until the plaintiff can gather what information he needs.... However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

*Santa Maria*, 202 F.3d at 1178 (citation omitted).

Here, Plaintiff does not set forth sufficient allegations to show that, despite all due diligence, she was unable to obtain vital information bearing on the existence of her claim[3]. *Santa Maria*, 202 F.3d at 1178. In fact, Plaintiff concedes that she retained a company to perform a forensic audit of her loan in May 2009 (well within the three year period), yet she did not file her lawsuit until two years later. Therefore, the limitations period is not extended by equitable tolling, and the motion to dismiss the second cause of action as to defendant Plaza is **GRANTED WITH PREJUDICE**.

2. Defendant Aurora.

Plaintiff alleges that defendant Aurora violated RESPA by failing to properly service and apply Moceri's scheduled periodic payments and failing to respond to Moceri's QWRs. FAC ¶ 91. For the reasons discussed above, failing to properly service and apply plaintiff's periodic payments does not state a private right of action under RESPA. 12 U.S.C. §2605; *Tina v. Countrywide Home Loans, Inc.,* 2008 WL 4790906 at *6.

---

[3] At oral argument, Plaintiff's counsel continued to reiterate that Plaintiff still does not have all of the information she requested, but did not provide any further facts to show due diligence.

With regard to the alleged failure to respond to Plaintiff's alleged QWRs, Defendants argue that Plaintiff fails to state a claim against Aurora because Plaintiff's letters do not qualify as QWRs. See 12 U.S.C. 2605(e)(1)(B). RESPA places a duty on loan servicers to respond to borrower inquiries relating to information about the borrower's loan. 12 U.S .C. § 2605(e). This duty is triggered when the servicer receives a "qualified written request" from a borrower. 12 U.S.C. § 2605(e) (1)(A). After receiving a QWR, a servicer must acknowledge its receipt within twenty days and respond to the inquiries within sixty days. 12 U.S.C. § 2605(e)(1), (2). For purposes of RESPA, a QWR is defined as: a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

Here, Plaintiff alleges she sent three different QWRs from June 8, 2009 through May 4, 2011.  (FAC Exs. J, T and W).  Plaintiff's first alleged QWR to Aurora is a letter dated June 8, 2009 from Michael Tepper, CEO of CareSsentials, Inc., on behalf of Plaintiff.  In the letter, Mr. Tepper requests the following:

> I am writing on behalf of my client to request the following information and documents for the above referenced loan that were never tendered at closing or were never issued as part of escrow and closing of the loan:
> 1. Provide a copy of the Final loan application – 1003. This document is missing.
> 2. Provide validity and proof of debt and the name of the original creditor.
> 3. Provide the Loan Sale and/or Servicing Agreements for this transaction.
> 4. Provide the name and address of the Note holder.
> 5. Provide the underwriting guidelines used to determine loan program affordability.
> 6. Provide the name of the underwriter who processed the loan application.
> 7. Provide the Borrower with copies of all signed closing and disclosure documents in your possession, including the residential loan applications signed by the borrower for this transaction.
> 8. Provide the final HUD-1 Settlement Statement.

9. Provide a signed and executed copy of the mortage and note.
10. Provide the completed appraisal used for this transaction.
11. Provide a copy of the Borrower's Credit Reports.
12. Provide proof of mailing for all disclosures on this transaction.
13. Provide the Lenders closing instructions to the settlement agent.
14. Provide the income documentation used for this transaction.
15. Provide the Borrower with a breakdown of all payments received to date from the Lender since the inception of this mortgage loan, detailing the amounts applied to principal and/or interest.
16. Provide an accounting detailing all late fees, negative amortization and an/all costs associated with this transaction.
17. Provide a copy of the Broker/Lender Agreement for this transaction.
18. Provide a completed detailed breakdown regarding escrows.
19. Provide a copy of all disbursements (to include all 3rd party invoices) at settlement.
20. Provide a copy of Lender's Private Mortgage Insurance Policy, if used for this transaction.
21. Provide a copy of Credit Default Swaps (CD's) contract if used for this transaction.

[Doc. No. 14-1 at 42-43.]

The alleged QWR is essentially a request for documents relating to the original loan transaction and its subsequent history. However, buried at Nos. 15 and 16 are requests for a breakdown of all payments. Many courts hold that such requests do not fall within the confines of RESPA. *See Junod v. Dream House Mortg.* Co., 2012 WL 94355 (C.D.Cal. 2012) (explaining copies of the promissory note and deed of trust and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"); *Derusseau v. Bank of America*, 2011 WL 5975821 (S.D. Cal. 2011)(no RESPA claim where plaintiff's purported QWR demanded a laundry list of information without identifying the reason plaintiff believed her account was in error; although the letter referenced servicing in passing and provided her name, loan number, and property address, plaintiff's requests were not related to the servicing of the loan, but rather more generally to the allegations of predatory schemes in the mortgage industry); *Pettie v. Saxon Mortg. Services*, 2009 WL 1325947 at *2 (W.D. Wash 2009)(finding letter not a QWR where it did not provide "reasons for their dispute of the amount due on the loan");

However, there is one district court opinion[4] that supports Plaintiff's argument that merely listing a request for payments is enough to qualify as a QWR under the plain language of the statute. *See Tamburri v. Suntrust Mortg.*, 2011 WL 6294472 at *fn. 8 (N.D. Cal. 2011)(criticizing *Pettie* for misreading § 2605(e) to require both a statement of reasons the account may be in error and a description of the information sought by the borrower).   Giving Plaintiff the benefit of a conflict in the district courts, this Court will deem, for purposes of a motion to dismiss, that the letters to Aurora were QWRs. However, the motion to dismiss as to this claim is GRANTED WITH LEAVE TO AMEND as to the pecuniary damages as set forth below.[5]

　　　　　3. Defendants US Bank, MERS and MERSCORP.

Plaintiff alleges that defendants US Bank and MERS violated RESPA when they failed to respond to Plaintiff's alleged QWRs [FAC ¶¶ 95, 96] and when they failed to notice plaintiff that servicing of the loan had transferred to Lehman [FAC ¶ 97].  For the reasons set forth above, for purposes of a motion to dismiss, the Court will accept that the letters are QWRS.  However, all of the letters are addressed to Aurora, not to US Bank, MERS and MERSCORP.  Moreover, the FAC fails to allege that US Bank, MERS or MERSCORP were loan servicers[6] under RESPA.  Therefore, the motion to dismiss the RESPA claim with regard to failure to respond to the QWRs and failure to notice plaintiff that servicing of the loan had transferred, as to defendants US Bank, MERS and MERSCORP, is **GRANTED WITH LEAVE TO AMEND**.  The other alleged RESPA violations as to these defendants (FAC ¶¶ 94 and 98) do not state private claims under RESPA.  12 U.S.C. §2605; *Tina v. Countrywide Home Loans, Inc.,* 2008 WL 4790906 at *6.  Therefore, the motion to dismiss as to those claims is **GRANTED WITH**

---

[4] Neither party provided this citation to the Court.

[5] Plaintiff also alleges that she was "damaged by Aurora in violation of RESPA when it engaged in negative credit reporting during its QWR investigation." FAC ¶ 93. However, this allegation does not state a claim under 12 U.S.C. § 2605(e) and therefore the motion to dismiss as to this allegation is **GRANTED WITH PREJUDICE**.

[6] A loan "servicer" means "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2).

**PREJUDICE**.

      4. Pecuniary Damages

      Plaintiff also fails to sufficiently alleged pecuniary damages. "Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim." *Molina v. Wash. Mut. Bank*, No. 09cv894, 2010 WL 431439, at *7 (S.D.Cal. Jan.29, 2010) (collecting cases); see also *Eronini v. JP Morgan Chase Bank NA*, No. 08–55929, 2010 WL 737841, at *1 (9th Cir. Mar.3, 2010) ("The district court properly dismissed the action because Eronini suffered no damages as a result of the alleged RESPA violation."). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm." *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 09–1916, 2009 WL 4505925, at *3 (E.D.Cal. Nov.20, 2009) (citation omitted). Courts "have interpreted this requirement liberally." *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, No. 09–1504, 2009 WL 2880393, at *15 (E.D.Cal. Sept.9, 2009) (plaintiff sufficiently pled actual damages where plaintiff alleged she was required to pay a referral fee prohibited under RESPA).

      At oral argument, Plaintiff's counsel represented that the FAC could be amended to include allegations that failure to respond to the alleged QWRs caused Plaintiff's credit report to be damaged, resulting in pecuniary damages. Therefore, the motion to dismiss the RESPA claim as to defendants Aurora, U.S. Bank, MERS and MERSCORP, is **GRANTED WITH LEAVE TO AMEND** as to the pecuniary damages. Plaintiff is advised, however, that the allegations must specifically set forth how the pecuniary damages were caused by the alleged failure to respond to the QWRs, as opposed to issues relating to the origination of the loan. Plaintiff should also specify how it is that Aurora failed to respond to the June 8, 2009 QWR, when Plaintiff's own FAC Exhibit K shows that Aurora did respond and apparently provided Plaintiff with a loan history. [Doc. No. 14-1 at 55.]

5. Statutory Damages

To recover statutory damages, a Plaintiff must plead a pattern or practice of noncompliance with RESPA. See 12 U.S.C. § 2605(f) (1)(b).  Here, Plaintiff alleges that she is entitled to statutory damages (FAC ¶99), but she does not allege facts which would plausibly show a pattern and practice of RESPA violations by Defendants. See *Lal v. Am. Home Mortg. Servicing*, 680 F.Supp.2d 1218, 1223 (E.D.Cal.2010) (RESPA claim deficient because "Plaintiffs flatly claim a pattern of noncompliance but state no facts other than the assurance that at trial they will present other customers who also did not receive QWR responses from Defendant."); see also *Garvey v. Am. Home Mortg. Servicing, Inc., No.* CV–09–973, 2009 WL 2782128, at *2 (D.Ariz. Aug. 31, 2009) (same). Here, Plaintiff does not make any allegations of a pattern of noncompliance. While no further allegations were provided at oral argument, the Court will allow leave to amend as to this issue, as to defendants Aurora, U.S. Bank, MERS and MERSCORP.

B.  TILA (fourth cause of action)

1.  Damages claims

Under TILA, the statute of limitations for civil claims for damages is one year.  15 U.S.C. §1640(e). "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D.Or.2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D.Cal.2008). The Ninth Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir.2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan papers were signed.

The complaint's face illustrates that TILA damages claims are time barred in that Ms. Moceri consummated her loan in August 2007 and filed her complaint in May,

2011, more than four years after their loan transaction. Thus, TILA damages are unavailable. Plaintiff's argument that equitable tolling applies is also unavailable for the reasons set forth above.

2. Rescission Claims.

To the extent that the FAC pursues a TILA rescission claim, it too is time barred. The statute of limitations begins to run from the date of closing of the transaction. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). The right to rescind expires at the earlier of (1) three years after the date of the transaction, or (2) upon the sale of the property. 15 U.S.C. § 1635(f). A claim filed more than three years after the consumation of the transaction is absolutely barred. *Miguel v. County Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002)(" § 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

Here, Plaintiff's loan closed in August 2007. Therefore, her TILA rescission remedy expired in August 2010. The only rescission letter sent directly to Plaza was sent on October 8, 2010, which was more than three years after the loan closed. (FAC, Ex. Z.) Therefore, the TILA rescission claim against Plaza based on the October 8, 2010 letter is not just time-barred, but extinguished.

Plaintiff also alleges that she sent a Notice of Recission to Aurora on October 31, 2009 (prior to the three year limitation), and that this notice put all of the defendants on notice of recission. (FAC ¶37). According to Plaintiff, as long as a notice of recission is sent within the three year time period (which it was), then it does not matter when she files her complaint. Defendants argue that it does not matter when the notice was sent; the lawsuit must be filed within three years of the transaction. Neither party is correct.

A claim filed more than three years after the consummation of the transaction is absolutely barred. *Miguel v. County Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002). The Supreme Court in *Ocwen Federal Bank*, the case the *Miguel* court relied on in concluding § 1635(f) is a statute of repose, specifically states that "subsection [1635(f)

] says nothing in terms of bringing an action but instead provides that the 'right of rescission under the Act shall expire' at the end of the time period." *Ocwen Federal Bank*, 523 U.S. at 417 (emphasis added and additions in original omitted). Section 1635 clearly states that a consumer, in order exercise his right of rescission under TILA, need only notify the creditor, "in accordance with regulations of the [Federal Reserve] Board, of his intention to do so." 15 U.S.C. § 1635(a). The Federal Reserve Board's regulations state plainly that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23. The regulation does not state or even refer to filing a suit in federal court. Once a consumer exercises his right to rescission by providing timely written notice in accordance with the requirements of 12 C.F.R. § 226.23, the creditor has twenty days to respond. See 15 U.S.C. § 1635(b). The First Circuit and some district courts have held that failure to respond to the notice of rescission in compliance with 15 U.S.C. § 1635(b) triggers the general one year statute of limitations for violations under TILA. See 15 U.S.C. §§ 1635(g), 1640(e); *Palmer v. Champion Mortgage*, 465 F.3d 24, 27 (1st Cir.2006) ("If a creditor does not respond to a rescission request within twenty days, the debtor may file suit in federal court to enforce the rescission right"); *Hunter*, 400 B.R. at 662; *Johnson*, 451 F.Supp.2d. at 39-41.

Moreover, despite the *Miguel* court's broad language to the contrary, the court in *Miguel* explicitly accepts this construction of rescission under TILA. Immediately following the *Miguel* court's strong language barring TILA suits filed after the three year statute of repose, the court states:

> Miguel argues that she should have been allotted an additional year in which to file suit after the expiration of the three-year period afforded by the statute. While Miguel is correct that 15 U.S.C. § 1640(e) provides the borrower one year from the refusal of cancellation to file suit, that is not the issue before us. Rather, the issue is whether her cancellation was effective even though it was not received by the Bank-the creditor-within the three-year statute of repose.

*Miguel* 309 F.3d at 1165.

This language has led some courts to cite *Miguel* for the proposition that plaintiffs have an additional year in which to file suit if creditors fail to properly respond to a

consumers notice of rescission. *Horton v. California Credit Corp. Retirement Plan*, 2009 WL 700223 at *5 (S.D.Cal.2009); *Madura v. Countrywide Home Loans, Inc.*, 2008 WL 2856813 at * 13 (M.D.Fla.2008) (recognizing courts are split on whether a suit must be filed within three years and citing Miguel for allowing suits brought after the three year limitations period). This Court agrees with this rationale.

Thus, Plaintiff is correct that she merely had to send a notice of rescission within three years. However, once the defendants failed to respond to the notice within 20 days, this is now a TILA violation and the one-year statute goes into effect. Therefore, Plaintiff must have filed her lawsuit within one year and twenty days after sending her notice of rescission. Here Plaintiff sent the notice of rescission on October 31, 2009. She then had one year from November 20, 2009, to file a complaint for a TILA violation. She did not file her complaint until May 2011. Therefore, Plaintiff's rescission claim is also barred by the statute of limitations, and equitable tolling does not apply for the reasons set forth above.

C.  FCRA (eighth cause of action)

Plaintiff's eighth cause of action for violation of the Fair Credit Reporting Act (FCRA) also fails under 15 U.S.C. § 1681s–2(b). Although section 1681s–2(b) is privately enforceable, *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir.2002), it "is triggered only after the consumer notifies the CRA [credit reporting agency], and the CRA then notifies the furnisher of credit." *Nelson v. Equifax Info. Servs., LLC*, 522 F.Supp.2d 1222, 1231 (C.D.Cal.2007) (citing *Nelson*, 282 F.3d at 1059); see also *Sweitzer v. Am. Express Centurion Bank*, 554 F.Supp.2d 788, 795 (S.D.Ohio 2008) ("[A] § 1681s–2(b)(1) violation is triggered only upon a consumer reporting agency providing notice to the furnisher of information"); *Forester v. Pa. Higher Educ. Assistance Agency*, WL 3710517 (C.D.Cal.2009).

Here, Plaintiff does not allege that she notified the CRA, and the CRA notified Aurora or any of the other defendants. Rather, Plaintiff merely alleges that "AURORA violated the FCRA when it reported negative information to MOCERI's credit report

during a time when AURORA was supposed to forgo any such reporting while investigating a QWR under RESPA." (FAC ¶ 200).[7]  The Plaintiffs allegations against the other defendants are similarly void.  Therefore, Plaintiff's claim under the FCRA fails.

D.  FDCPA (ninth cause of action)

Plaintiff also fails to state a claim under the Fair Debt Collection Practices Act (FDCPA) for two reasons.  First, Plaintiff has not sufficiently alleged that Defendants are debt collectors.  The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  A debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985).  Second, Plaintiff has not sufficiently alleged that debt collection is at issue.  FDCPA claims cannot be based upon the lender enforcing its security interest under the subject deed of trust in the ordinary course of foreclosure because "foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) (citing *Ines v. Countrywide Home Loans*, No. 08cv1267 -WQH, 2008 WL 4791863, *2 (S.D. Cal. Nov. 3, 2008)); *see also Walker v. Equity 1 Lenders Group*, No. 09cv325- WQH, 2009 WL 1364430, *7 (S.D. Cal. May 14, 2009).  There are no allegations that Defendants attempted to collect debt in a manner outside of the normal scope of foreclosure proceedings.  Therefore, Plaintiff's claim under the FDCPA fails.

E.  Supplemental Jurisdiction.

Assuming Plaintiff can appropriately amend the FAC, Plaintiff's only remaining federal claim will be for violations of RESPA as to defendants Aurora, U.S. Bank,

---

[7] In her declaration in opposition to defendants' motion to dismiss, plaintiff states: "In June 2011, I requested and received a credit report.  The report showed that Aurora gave negative credit information during the time period it was investigating my QWR under RESPA.  Through my agent, I advised the credit reporting bureau of my dispute with Aurora negative reporting." Doc. No. 21-1 at 2.  Again, however, plaintiff does not allege that the CRA then notified Aurora about the dispute.

MERS and MERSCORP, that occurred well after the origination of the loan and simply involve the servicing of the loan.  On the other hand, Plaintiff's state law claims concern the origination of the loan and issues of fraud.  The Court finds that, under the unique facts of this case, Plaintiff's state law claims so substantially predominate over her remaining RESPA claim that the exercise of supplemental jurisdiction is no longer appropriate.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(2) (a district court may decline to exercise supplemental jurisdiction over a claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction").  Therefore, the first, third, fifth, sixth, seventh causes of action are **DISMISSED WITHOUT PREJUDICE** to filing in state court.

F.  Preliminary Injunction.

The Preliminary Injunction was issued on the basis of the alleged RESPA and TILA violations.  The TILA claims have now been dismissed with prejudice.  RESPA does not provide for injunctive relief.  12 U.S.C. § § 2506, 2608; *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041 at * 4 (N.D. Cal.); *Tamburri v. Suntrust Mortg.*, 2011 WL 6294472 at *7 (N.D. Cal.).  Therefore, the Court will set an Order to Show Cause hearing regarding why the preliminary injunction should not be dissolved.

## V. CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

1. Defendants' motions to dismiss are **GRANTED WITH PREJUDICE** as to the fourth, eighth and ninth causes of action as to all defendants, and as to the second cause of action as to defendant Plaza;

2. Defendants' motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to the second cause of action as to defendants Aurora, U.S. Bank, MERS and MERSCORP;

3. Defendants' motions to dismiss are **DENIED WITHOUT PREJUDICE** as to the state law claims (the first, third, fifth, sixth, seventh causes of action);

4. The Court declines to exercise supplemental jurisdiction as to the state law claims and, therefore, those claims (first, third, fifth, sixth, seventh causes of action) are **DISMISSED WITHOUT PREJUDICE**;

5. On or before **March 29, 2013**, Plaintiff shall file a Second Amended Complaint solely containing a RESPA claim as to defendants Aurora, U.S. Bank, MERS and MERSCORP (as set forth above);

6. An Order to Show Cause Hearing (**OSC**) is **HEREBY SCHEDULED** for **March 21, 2013** at **2:00 p.m.** with regard to why the preliminary injunction should not be dissolved. At the same time, the Court will hold a hearing pursuant to 28 U.S.C. § 1352 and Fed.R.Civ.P. Rules 65(c), 65.1 to determine the disposition of the security bond for an injunction that was based upon the federal claims. *See Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988). Briefs with regard to the OSC and bond hearing may be filed by **March 15, 2013**. Replies may be filed by **March 19, 2013.**

**IT IS SO ORDERED.**

DATED: March 7, 2013

_____
CATHY ANN BENCIVENGO
United States District Judge